

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-HC-2045-BO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Petitioner, | ) | |
| v. | ) | **ORDER** |
| ANTON JOHNSON, | ) | |
| Respondent. | ) | |

In this action, the government seeks to commit Anton Johnson (hereinafter "Johnson" or "respondent") as a sexually dangerous person pursuant to 18 U.S.C. § 4248 ("§ 4248"), a civil commitment statute established by the Adam Walsh Child Protection and Safety Act, Pub. L. No. 109-248, 120 Stat. 587 (2006) ("Adam Walsh Act"). Johnson has moved to dismiss the action on jurisdictional and constitutional grounds. For the reasons that follow, the court concludes, although Johnson's presence in the federal prison system stems from a conviction for violations of the Official Code of the District of Columbia and not for a violation of the United States Code, Johnson is subject to § 4248 because he was in the legal custody of the federal Bureau of Prisons (hereinafter "BOP") at the time this case was initiated. Therefore, Johnson's jurisdictional challenge is without merit. Furthermore, Johnson has failed to establish a constitutional violation. Accordingly, Johnson's motion to dismiss [D.E. 13] is DENIED.[1]

---

[1] This order addresses identical issues to those raised in <u>United States v. Wooden</u>, 5:10-HC-2151-BO. A similar order has been filed in that case contemporaneously with this order.

## I. BACKGROUND

The government filed its certificate [D.E. 1] initiating this case on March 31, 2009. At the time of the certification, Johnson was housed at the Federal Correctional Institution, Butner, North Carolina (hereinafter "Butner"), serving a criminal sentence after the revocation of his parole on a 1990 conviction in the District of Columbia Superior Court.[2] The indictment that resulted in the 1990 District of Columbia conviction included a total of nine counts encompassing three separate incident dates. Specifically, the indictment charged Johnson with crimes occurring on August 21, 1988, against a 23-year-old female; crimes occurring on September 30, 1988, against a 9-year-old female; and crimes occurring on April 29, 1989, against a different 9-year-old female and her 13-year-old sister.

On February 7, 1990, Johnson pled guilty to three counts of the District of Columbia indictment. The remaining counts were not prosecuted. Two of the counts to which Johnson pled guilty relate to the August 23, 1988, incident involving the 23-year-old victim. For this incident, Johnson pled guilty to assault with intent to kidnap[3] and assault with intent to rape.[4] For assault with intent to kidnap, Johnson received a 14- to 45-month term of imprisonment. For assault with intent to rape, Johnson received a 3- to 9-year term of imprisonment. Lastly, Johnson pled guilty to committing an indecent act[5] upon the 9-year-old victim in the April 29, 1989, incident. For this count, Johnson received a 3- to 9-year term of imprisonment. The

---

[2] The court's understanding of the origin and history of Johnson's incarceration at the time of the certification in this case has been gathered from the government's certification [D.E. 1] and descriptions of the procedural history contained in various reports of mental health examiners which have been filed in this case by each party under seal.
[3] D.C. CODE § 22-503 (1981 ed.), current version at D.C. Code § 22-403 (2001 ed.).
[4] D.C. CODE § 22-501 (1981 ed.), current version at D.C. Code § 22-401 (2001 ed.).
[5] D.C. CODE § 22-3501 (1981 ed.) (repealed 1994).

2

sentences on all three counts were ordered to run consecutively. Thus, the maximum term of imprisonment possible under the 1990 District of Columbia sentence was 21 years and 9 months. Johnson was released on mandatory parole in May 2003.[1]

On November 26, 2003, Johnson was arrested and charged with violating his parole based on conduct that occurred on October 3, 2003. This conduct also resulted in new charges in the State of Maryland. The Maryland charges were resolved on January 4, 2004, when Johnson pled guilty to second degree assault upon an 8-year-old female, for which Johnson received a 31-day sentence. After the expiration of the 31-day Maryland sentence, Johnson remained in custody pending the resolution of the District of Columbia parole revocation matter. On August 25, 2004, Johnson's District of Columbia parole was revoked, and he was sentenced to a prison term of 64 to 78 months. Johnson was scheduled for release on April 4, 2009, but on March 31, 2009, the government filed its certificate initiating the present commitment action, which

---

[1] After his guilty plea and while serving his sentence in the District of Columbia case, Johnson pled guilty on November 7, 1990, to charges in the District Court of Montgomery County, Maryland. The Maryland charges appear to stem from the same April 29, 1989 incident which was involved in the District of Columbia case, but the Maryland charges relate only to the 13-year-old sister of the 9-year-old victim involved in the District of Columbia guilty plea. It is unclear how both the District of Columbia and the State of Maryland would have had jurisdiction over crimes which apparently took place in a single location. In the Maryland case, Johnson pled guilty to one count of child abuse and one count of a third degree sexual offense. Both counts involved the 13-year old victim. For the child abuse count, Johnson received a sentence of 15 years, and for the third degree sexual offense count, Johnson received a sentence of 10 years. The Maryland court suspended execution of all but 4 years and ordered the sentence to run concurrently with the sentence imposed in the District of Columbia case. The Maryland sentence also included a period of 5 years of supervised probation. The record before this court is unclear whether this probation term was to begin running upon his actual release from prison or if it ran and expired before Johnson's May 2003 release to parole in the District of Columbia case. It is also unclear whether, at the time of Johnson's May 2003 parole release, the Maryland court retained authority to lift the suspension of any unexpired portion of Johnson's original 15-year Maryland prison sentence.

3

automatically stayed Johnson's release. See 18 U.S.C. § 4248(a). Therefore, Johnson remains in custody at Butner solely on the basis of the government's certification in the present commitment action.

At the time of the government's certification in this case, all Adam Walsh Act commitment cases in this district were held in abeyance pending the outcome of appellate review of the district court's order finding § 4248 unconstitutional in United States v. Comstock, 507 F.Supp.2d 522 (E.D.N.C. 2007), aff'd, 551 F.3d 274 (4th Cir. 2009), rev'd in part, 130 S. Ct. 1949 (2010), rev'd, 627 F.3d 513 (4th Cir. 2010), petition for cert. filed, ___ U.S.L.W. ___ (Mar. 4, 2011) (10-9360). The abeyance order was lifted after the Supreme Court issued its ruling on May 17, 2010, which held that Congress did not exceed its constitutional authority in enacting § 4248.

On August 30, 2010, Johnson filed his second motion to dismiss [D.E. 13] the present action. On November 13, 2010, the government filed a response [D.E. 15] opposing the motion to dismiss. On February 10, 2011, Johnson filed a memorandum [D.E. 30] in support of the motion to dismiss. On February 16, 2011, the court ordered the parties to submit additional memoranda. Johnson filed two additional memoranda, the first on February 22, 2011, [D.E. 35], and the second on February 25, 2011, [D.E. 36]. The government filed an additional memorandum [D.E. 38] on March 3, 2011. The matter is ripe for ruling.

## II. DISCUSSION

Johnson's motion to dismiss [D.E. 13] incorporates by reference arguments originally made in motions to dismiss filed in United States v. Comstock, No. 5:06-HC-2195-BR (E.D.N.C.) [D.E. 12 and 19]. In United States v. Comstock, 130 S. Ct. 1949 (2010), the Supreme

4

Court upheld 18 U.S.C. § 4248 as valid under the Necessary and Proper Clause and remanded Comstock to the Fourth Circuit Court of Appeals for further proceedings. Upon remand, the Fourth Circuit held that the "clear and convincing evidence" standard by which the government must prove an individual is sexually dangerous for purposes of commitment under § 4248 does not violate the constitutional guarantee of due process. United States v. Comstock, 627 F.3d 513, 524 (4th Cir. 2010), petition for cert. filed, ___ U.S.L.W. ___ (U.S. Mar. 4, 2011) (No. 10-9360). Therefore, the appellate decisions in Comstock provide no grounds on which to grant respondent's motion to dismiss.

Johnson further contends in his motion to dismiss [D.E. 13] that the commitment action should be dismissed because of Johnson's status as a person convicted and sentenced under the District of Columbia Official Code (hereinafter "D.C. Code offender"). Specifically, Johnson argues for dismissal based on the fact that the District of Columbia Official Code contains its own provisions for the commitment of "sexual psychopaths." See D.C. CODE § 22-3803 *et seq.* (hereinafter "Sexual Psychopath Act"). Johnson contends that, as compared to § 4248, the Sexual Psychopath Act "provides additional protection to the individual who is alleged to be a sexual psychopath because the individual can demand a jury trial as to the issue of whether or not he/she is indeed a sexual psychopath as defined by the D.C. Code." [D.E. 13] at 3. Based on this distinction, Johnson asserts "that the sexual dangerousness/sexual psychopath issue should be determined in the District of Columbia Superior Court as opposed to the United States District Court for the Eastern District of North Carolina." Id.

Additionally, Johnson argues that the present commitment action should be dismissed for lack of jurisdiction. In support of his jurisdictional challenge, Johnson asserts that D.C. Code

offenders who are housed in a BOP facility are not "in the custody of the Bureau of Prisons" as that phrase in § 4248 has been interpreted by the United States Court of Appeals for the Fourth Circuit. [D.E. 35] at 2.

For the reasons that follow, the court holds Johnson's jurisdictional and constitutional challenges are without merit.

## I. D.C. Code offenders are in the legal custody of the Bureau of Prisons.

The Adam Walsh Act contains a jurisdictional requirement that authorizes the initiation of a commitment action against a person "in the custody of the Bureau of Prisons." 18 U.S.C. § 4248(a).[2] The Fourth Circuit held that "under § 4248 the word 'custody' refers not to physical custody or some qualified derivative but rather to legal custody. The statutory language 'in the custody of the Bureau of Prisons' therefore requires the BOP to have ultimate legal authority over the person's detention." United States v. Joshua, 607 F.3d 379, 388 (4th Cir. 2010).

According to the laws of the District of Columbia, "All prisoners convicted in the District of Columbia for any offense . . . shall be committed . . . to the custody of the Attorney General of the United States or his authorized representative, who shall designate the places of confinements where the sentences of all such persons shall be served." D.C. CODE. § 24-201.26. Contrary to Johnson's assertion in his supplemental memorandum, [D.E. 35] at 1, this statute was in effect at the time of Johnson's conviction and at the time of his parole revocation. It was in enacted in

---

[2] The statute also authorizes the initiation of a commitment proceeding against a person "who has been committed to the custody of the Attorney General pursuant to section 4241(d), or against whom all criminal charges have been dismissed solely for reasons relating to the mental condition of the person." 18 U.S.C. § 4248(a). Neither of these alternate jurisdictional bases apply to Johnson. Therefore, the government may proceed only if Johnson was "in the custody of the Bureau of Prisons" at the time of certification.

6

1940 by the 76th Congress. See Act of June 6, 1940, ch. 254, 54 Stat. 242 (1940). As such, Johnson was in the legal custody of the Attorney General at the time of the filing of the certificate which initiated the present commitment action. Assuming *arguendo* that legal custody on the part of the Attorney General is different from legal custody on the part of the Bureau of Prisons, subsequent legislation makes it clear that the Bureau of Prisons has legal custody over all prisoners sentenced under the District of Columbia Official Code.

The National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. 105-33, § 11201, 111 Stat. 712, 734 (1997) (hereinafter "Revitalization Act"), initiated a process by which all D.C. Code offenders would be housed in facilities operated or contracted by the Bureau of Prisons. The Revitalization Act further provided that the Lorton Correctional Complex, which had been the primary facility for the housing of D.C. Code offenders, would be closed. Specifically, the Revitalization Act included a provision that states,

> any person who has been sentenced to incarceration pursuant to the District of Columbia Official Code . . . shall be designated by the Bureau of Prisons to a penal or correctional facility operated or contracted for by the Bureau of Prisons, for such term of imprisonment as the court may direct. <u>Such persons shall be subject to any law or regulation applicable to persons committed for violations of laws of the United States consistent with the sentence imposed.</u>

D.C. CODE § 24-101(a) (emphasis added). This provision is retroactive, and it applies to Johnson despite the fact he was originally sentenced prior to its passage.[3] Thus, unlike the "Memorandum of Agreement" between the Army and the BOP which was at issue in Joshua, a District of Columbia statute endows the Bureau of Prisons with legal custody over D.C. Code

---

[3] Additionally, the court notes that at the time the present § 4248 commitment action was initiated, Johnson was incarcerated pursuant to a revocation of parole, which took place after the passage of the Revitalization Act.

7

offenders. Cf., Joshua 607 F.3d at 381-82 ("Memorandum of Agreement" explicitly states that military prisoners in BOP facilities remain in the permanent custody of the U.S. Army). That is, some military prisoners are housed in BOP facilities by contract, whereas all D.C. Code offenders are in BOP custody by statute.

Other provisions of the Revitalization Act show Congress intended for federal commitment statutes to apply to D.C. Code offenders. Although the District of Columbia Official Code and the United States Code are separate and distinct, Congress has the power to enact and amend both codes. Moreover, in passing the Revitalization Act, Congress actually amended both codes. In the same legislation which made D.C. Code offenders subject to any law applicable to inmates serving sentences for federal offenses, the longstanding federal commitment statutes in Chapter 313 of Title 18 of the United States Code were also amended. See 111 Stat. at 739. Prior to the Revitalization Act, the entirety of Chapter 313 was inapplicable to prosecutions arising under the District of Columbia Code.

An understanding of how the Revitalization Act changed Chapter 313 requires an examination of the chapter's origin and development. Chapter 313 was created in 1948 as part of a comprehensive revision of Title 18 of the United States Code. See Act to revise, codify and enact into positive law, Title 18 of the United States Code, entitled "Crimes and Criminal Procedure," ch. 645, 62 Stat. 683, 847 (1948). In the 1948 Act, Chapter 313 was entitled "Mental Defectives," and it provided for the examination and treatment of inmates "alleged to be insane or of unsound mind or otherwise defective." Id. This original version of Chapter 313 consisted only of sections 4241 through 4243, but the original provisions do not correspond to the current statutes bearing those section numbers.

8

In 1949, five additional sections were added to Chapter 313 with the following section headings:

4244. Mental incompetency after arrest and before trial.

4245. Mental incompetency undisclosed at trial.

4246. Procedure upon finding of mental incompetency.

4247. Alternate procedure on expiration of sentence.

4248. Termination of custody by release or transfer.[4]

Act to provide for the care and custody of insane persons charged with or convicted of offenses against the United States, and for other purposes, ch. 535, 63 Stat. 686 (1949). The provisions added in 1949 included a procedure for committing dangerous individuals past the expiration of their criminal sentence.

Thirty-five years later in 1984, Chapter 313 underwent a major revision. See Insanity Defense Reform Act of 1984, Pub. L. 98-473, 98 Stat. 2057, 2057-67 (1984) (hereinafter "IDRA"). The title of Chapter 313 was changed to "Offenders with Mental Disease or Defect." The eight former sections were reconstituted into seven sections, numbered 4241 through 4247. Id.[5] The section numbers established by the IDRA remain the same in the current version of Chapter 313. Id. For example, the former section 4244, dealing with competency to stand trial, corresponds to the current section 4241. Id. The former section 4247, dealing with commitment of prisoners whose mental condition poses a danger to persons or property, corresponds to the current section 4246. Id. The IDRA also added entirely new provisions, including those dealing

---

[4] The section then denominated as § 4248 bears no relation to the current version of § 4248.
[5] For 22 years between 1984 and 2006, Chapter 313 did not include a section 4248.

9

with persons found not guilty by reason of insanity, codified in section 4243. Id. Importantly, the IDRA included an express limitation in subsection (j) of section 4247 that "[t]his chapter does not apply to a prosecution under an act of Congress applicable exclusively to the District of Columbia or the Uniform Code of Military Justice." Id.

Aside from a few non-substantive amendments, Chapter 313 remained largely unchanged for the next 13 years. In 1997, Congress passed the Revitalization Act, which primarily amended the District of Columbia Official Code, but it also modified Chapter 313 of Title 18 of the United States Code. Specifically, the limitation in 18 U.S.C § 4247(j) was amended so that, instead of the entirety of Chapter 313 being inapplicable to D.C. Code offenders, now only four sections are expressly inapplicable to D.C. Code offenders. That revision remains the current version of section 4247(j). It reads, "Sections 4241, 4242, 4243, and 4244 do not apply to a prosecution under an Act of Congress applicable exclusively to the District of Columbia or the Uniform Code of Military Justice." 18 U.S.C. § 4247(j). Therefore, the Revitalization Act authorized the application of the remaining sections of Chapter 313 to D.C. Code offenders. At the time, the remainder of the chapter consisted of sections 4245, 4246, and 4247. Furthermore, the Revitalization Act added the phrase "in the custody of the Bureau of Prisons" to 18 U.S.C. § 4246 as a jurisdictional requirement.

In 2006, the Adam Walsh Act created the current version of § 4248, which the Supreme Court has described as "a modest addition to a set of federal prison-related mental-health statutes that have existed for many decades." Comstock, 130 S. Ct. at 1958. Therefore, § 4248 must be read *in pari materia* with section 4246.

Section 4247(j) remains as it was before the Adam Walsh Act was passed. As such,

§ 4248 is not included among the sections of Chapter 313 which are expressly inapplicable to D.C. Code offenders. Thus, Congress has carved out certain sections of Chapter 313 as inapplicable to D.C. Code Offenders, but Congress did not so carve out § 4248.

The Revitalization Act endowed the Bureau of Prisons with legal custody over imprisoned D.C. Code offenders and subjected such persons to commitment under § 4246. Because the jurisdictional element of § 4248 uses the same phrase "in the custody of the Bureau of Prisons" which was added to § 4246 as part of the Revitalization Act, a statute specifically reforming the governmental structure of the District of Columbia, and because Congress did not add § 4248 to the list in § 4247(j) of sections that are inapplicable to D.C. Code offenders when passing the Adam Walsh Act, the court concludes that § 4248 does apply to D.C. Code offenders. Therefore, Johnson's jurisdictional challenge is without merit.

## II. **Johnson fails to establish a constitutional violation based on the Sexual Psychopath Act.**

Johnson argues "that his procedural due process rights under the 5th and 14th Amendments have been violated in that the District of Columbia, the jurisdiction in which he was convicted and initially incarcerated, has a law (D.C. Code § 22-3804) that allows the United States Attorney for the District of Columbia to file for civil commitment of a 'sexual psychopath'." [D.E. 13] at 3. Johnson contends that, as compared to § 4248, the D.C. Code's Sexual Psychopath Act "provides additional protection to the individual who is alleged to be a sexual psychopath because the individual can demand a jury trial as to the issue of whether or not he/she is indeed a sexual psychopath as defined by the D.C. Code." Id. Based on this distinction, Johnson asserts "that the sexual dangerousness/sexual psychopath issue should be determined in the District of Columbia Superior Court as opposed to the United States District

11

Court for the Eastern District of North Carolina." Id. Neither Johnson's motion to dismiss [D.E. 13], which was filed by Johnson's prior counsel, nor the government's first response [D.E. 15] cited any authority for what impact the existence of the Sexual Psychopath Act has on the application of § 4248 against D.C. Code offenders. The court ordered that the parties further brief the issue. [D.E. 34]. Johnson filed two additional memoranda. [D.E. 35, 36]. The government filed an additional response. [D.E. 38]. Having considered the arguments of the parties, the court concludes that Johnson has failed to assert grounds for which the existence of the Sexual Psychopath Act requires the dismissal of a § 4248 action against a D.C. Code offender.

### III. CONCLUSION

For the foregoing reasons, respondent's motion to dismiss [D.E. 13] is hereby DENIED.

SO ORDERED. This 26 day of May 2011.

*[signature]*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE